UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-60521-BLOOM/VALLE

DEBRA ANN BERG,

       Plaintiff,

v.

ANDREW M. SAUL,[1]
*Commissioner of the*
*Social Security Administration,*

       Defendant.

_____/

## REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiff's Motion for Summary Judgment (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 16) (together, "the Motions"). U.S. District Judge Beth Bloom referred the Motions to the undersigned for a Report and Recommendation. (ECF No. 5); *see also* 28 U.S.C. § 636(c).

After due consideration of the record, the Motions, Defendant's Response (ECF No. 17), and being otherwise fully advised on the matter, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and the Administrative Law Judge's Decision ("ALJ's Decision") be **AFFIRMED** for the reasons set forth below.

_____

[1] After the commencement of this case, Andrew M. Saul became the Commissioner of the Social Security Administration. Accordingly, pursuant to Federal Rule of Civil Procedure 25(d), the Clerk is DIRECTED to substitute Andrew M. Saul, Commissioner of Social Security, as Defendant in this case. *See* (ECF No. 16 at 1).

# I.     PROCEDURAL HISTORY

This suit involves Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (the "Act").  Plaintiff applied for benefits in May 2015, alleging a disability onset date of May 29, 2014.  (R. 154-58).[2]  Plaintiff's claim was denied initially and again upon reconsideration.  (R. 61-73, 75-96).  Plaintiff requested a hearing, which was held on September 19, 2017 before ALJ Denise Pasvantis.  (R. 39-60, 110-11).  Plaintiff, who was represented by counsel, and a Vocational Expert both testified at the hearing.  (R. 39-60).  On January 26, 2018, the ALJ issued a decision, denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Act.  (R. 10-18).

Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision."  (R. 1-6); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff now seeks judicial review of the ALJ's Decision.  (ECF No. 1); *see also* 42 U.S.C. § 405(g).  Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

# II.     STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination.  *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see also* 42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is

---

[2] All references are to the record of the administrative proceeding, which was filed as part of the Defendant's Answer.  *See* (ECF Nos. 9, 10).

"more than a scintilla, but less than a preponderance") (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).   A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]."   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).   Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence."   *Bloodsworth,* 703 F.2d at 1239 (citing 42 U.S.C. § 405(g)).   Within this narrow role, however, courts "do not act as automatons."   *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).   Rather, courts "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."   *Id.* (citing *Bloodsworth*, 703 F.2d at 1239).

To qualify for benefits, a claimant must be disabled within the meaning of the Act.   *See* 42 U.S.C. § 423 (standard for DIB).   A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(A).   A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. § 423(d)(3).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1)     Is the person presently unemployed?
(2)     Is the person's impairment severe?
(3)     Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?
(4)     Is the person unable to perform his or her former occupation?
(5)     Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4). An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). A negative answer to any question, other than Step 3, leads to a determination of "not disabled." *Id.*

Importantly, the burden of proof rests on the claimant through Step 4. *Phillips*, 357 F.3d at 1241 n.10. At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The regulations define RFC as that which an individual is still able to do despite the limitations caused by her impairments. 20 C.F.R. § 404.1545(a). The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). The RFC assessment is used to determine whether the claimant can return to her past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled." *Phillips*, 357 F.3d at 1238 (citations omitted). If a claimant cannot return to her past relevant work, then the ALJ proceeds to Step 5. *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v); *Phillips*, 357 F.3d at 1239 (citation omitted). The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant can perform. *Phillips*, 357 F.3d at 1239. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. *Id.* Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled. *Id.* The ALJ may determine whether the claimant has the ability to adjust to other work in the national economy by either: (i) applying the Medical Vocational Guidelines (contained within 20 C.F.R. part 404, subpart

P, appendix 2); or (ii) using a Vocational Expert, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy. *Id.* at 1239-40.

### III.   THE RECORD

#### A.  Plaintiff's Background and Hearing Testimony

Plaintiff, born in March 1958, was 59 years old at the time of the administrative hearing. (R. 42, 155).  Plaintiff obtained a high school general equivalency diploma, and has past relevant work as an executive assistant.  (R. 42, 45, 56).  Plaintiff testified that she was unable to continue working as an executive assistant because her bilateral carpal tunnel syndrome ("CTS") and lower back pain prevented her from typing and sitting for long periods.  (R. 45).  Plaintiff took Vicodin and Ibuprofen for pain, Xanax to help her sleep, and various vitamin supplements.  (R. 45-46).  Plaintiff testified that she stopped taking Vicodin because it made her nauseous.  (R. 47).

Regarding her lower back, Plaintiff testified that she could not sit for more than 15 minutes, stand for more than 10-15 minutes, and walk for more than 10 minutes.  (R. 53-54).  Plaintiff stated that none of her doctors had recommended surgery for her back pain; rather, treatment consisted of pain killers and an exercise program.  (R. 48, 51).

Regarding her hands, Plaintiff testified that she was diagnosed with bilateral CTS.  (R. 45). Plaintiff underwent bilateral CTS-release surgery in September 2015.  (R. 50, 328, 338-39).  Plaintiff conceded that between October 2015 and January 2016, the pain in her hands "went away" and she was able to use her hands "for everything."  (R. 50).  Although Plaintiff's pain did not recur, she began to feel renewed numbness and tingling in her palms and wrists in early 2016.  (R. 50-51). According to Plaintiff, a more recent EMG/NCV study revealed that Plaintiff continued to suffer from CTS, and Plaintiff's hand surgeon suggested she might want to consider a second surgery on her hands.  (R. 47).  Plaintiff declined the second surgeries, opting instead for bilateral cortisone shots, which alleviated her symptoms.  (R. 47-48).

Plaintiff testified that she cannot blow-dry her hair, wash the dishes, do laundry, mop, dust, or perform any yard work due to pain and poor grasp.  (R. 48-50).  The numbness in her hands causes her to drop wine glasses, dishes, and pens, and she sometimes wakes up in the middle of the night having to "shake her hands out."  (R. 52-53).  Plaintiff is unable to drive for more than five minutes without having to shake her hands to relieve the numbness, so she has stopped driving.  (R. 53).  Plaintiff wears hand braces to sleep.  (R. 55).

According to Plaintiff, her daily activities include reading newspapers, books, and magazines.  (R. 51).  She showers, watches television, sleeps, and sometimes accompanies her husband to the grocery store.  (R. 55).  Plaintiff does yoga to help her back pain, but she does not perform movements that strain her wrists.  (R. 51).  Plaintiff goes out to eat and to the movies, talks on the telephone using the speaker, makes sandwiches, uses the microwave, and is able to write checks.  (R. 49, 52).  Plaintiff also uses a computer once a day to check the news on the internet, but she does not do much typing.  (R. 53).

### B.  Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing and categorized Plaintiff's past relevant work as an administrative or executive assistant (a skilled, sedentary job with an SVP of 7).  (R. 56).  The ALJ asked the VE a series of hypotheticals.  Initially, the ALJ asked the VE whether a hypothetical individual of Plaintiff's age, education, work experience, with the physical and mental limitations described in the State Agency Reviewer's (Dr. Larry Meade's) initial RFC,[3] could perform Plaintiff's past relevant work.  (R. 56-57).  Specifically, the ALJ limited the hypothetical individual to lifting/carrying 10 pounds occasionally and less than 10 pounds frequently; standing and/or walking for 6 hours in an 8-hour day; sitting for 6 hours in an 8-hour day; occasionally climbing ramps, stairs, ladders, ropes, or scaffolds; occasionally stooping and crouching; and frequently

---

[3] Dr. Meade's RFC is found at Exhibit 4A in the administrative record.  *See* (R. 87-91).

kneeling or crawling.  (R. 56-57).  The VE testified that such an individual could perform Plaintiff's past relevant work.  (R. 57).

The ALJ then added alternative restrictions to the individual in the first hypothetical.  In a follow-up question, the ALJ further restricted the individual to "frequent handling with the bilateral upper extremities."  (R. 57).  In a third question, the ALJ limited the individual to "only frequent feeling with the upper extremities."  *Id.*  In the fourth question, the ALJ restricted the individual to "only occasional feeling with the bilateral extremities."  (R. 57-58).  Lastly, the ALJ restricted the individual in the fourth hypothetical to "standing and walking only two hours per day."  (R. 58).  In response to each of these variations, the VE testified that the hypothetical individual could perform Plaintiff's past relevant work.  (R. 57-58).

Plaintiff's counsel then posed a more restrictive scenario, limiting the individual in the first hypothetical to only "occasionally" using the upper extremities for feeling, handling, and grasping.[4] (R. 58-59).  In response, the VE testified that such an individual would not be able to perform Plaintiff's past relevant work.  (R. 59).

### C.    Medical Records

Between January 2015 and August 2017, Plaintiff saw various doctors for her CTS and lower back pain:  Drs. Christopher Troiano (orthopedic), Abraham Chamely (neurologist), Michael Alexander (primary care physician), Purnell Traverso (hand surgeon), and Allen Teman (neurologist).  These treatment notes and opinions are discussed below as they relate to Plaintiff's arguments.

---

[4] This hypothetical is based on Dr. Troiano's May 2017 Disability Impairment Questionnaire. (R. 359-63).

## IV.    THE ALJ'S DECISION

After reviewing the evidence and conducting the requisite five-step analysis, the ALJ concluded that Plaintiff "has not been under a disability within the meaning of the [Act] from May 29, 2014 through the date of this decision."  (R. 11, 18).

At Step 1, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since May 29, 2014, the alleged onset date.  (R. 13).

At Step 2, the ALJ found that Plaintiff had the following severe impairments: bulging lumbar discs with spondylolisthesis at L4-5; and status post bilateral carpal tunnel release with residual paresthesias (tingling) of the palms.  (R. 13).

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any one of the Listings.  (R. 14).

Next, the ALJ determined that Plaintiff had the RFC to: (i)  lift and/or carry 10 pounds occasionally and less than 10 pounds frequently;[5] (ii) stand and/or walk for 2 hours in an 8-hour workday; (iii) sit for 6 hours in an 8-hour workday; (iv) frequently kneel and crawl; (v) frequently feel with the bilateral upper extremities; and (vi) occasionally crouch, stoop, and climb.  (R. 15).

At Step 4, after considering the VE's testimony and Plaintiff's RFC, the ALJ concluded that Plaintiff could perform her past relevant work as an administrative assistant, which was a sedentary skilled job with an SVP of 7.  (R. 18).  Accordingly, the ALJ found that Plaintiff was not disabled from May 29, 2014, through the date of her decision.  *Id.*   The ALJ did not proceed to Step 5.

## V.    DISCUSSION

Plaintiff raises three primary arguments on appeal.  First, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence and that further manipulative and

---

[5] The ALJ inadvertently omitted the phrase "less than" in discussing Plaintiff's ability to "frequently" lift/carry 10 pounds.  This omission is evident when one compares the ALJ's Decision with the ALJ's hypothetical to the VE.  *Compare* (R. 15) *with* (R. 57).

sitting/standing restrictions are warranted.  (ECF No. 15 at 26-29).  Second, Plaintiff argues that the ALJ erred in evaluating the medical opinions.  *Id*. at 29-32.  Lastly, Plaintiff argues that the ALJ erred in not considering whether Plaintiff was disabled during a "closed period" predating her CTS-release surgery.  *Id.* at 32-33.  For the reasons discussed below, the undersigned finds that substantial evidence supports the ALJ's RFC determination, her assessment of the medical opinions, and that Plaintiff did not establish a closed period of disability.

### A.  Substantial Evidence Supports the ALJ's RFC Determination

A claimant's RFC is the most a claimant can do despite the limitations caused by her impairments.  20 C.F.R. § 404.1545(a).  Along with age, education, and work experience, the ALJ considers a claimant's RFC in determining whether the claimant can work.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  An RFC determination is based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  *Id.*  Ultimately, the responsibility for determining a claimant's RFC rests with the ALJ.  *See* 20 C.F.R. § 404.1546(c); *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016) (noting that the task of determining a claimant's RFC and ability to work rests with the ALJ, not a doctor); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (same); *see also* 20 C.F.R. § 404.1527(d)(1)-(2) (determination of a claimant's disability and RFC are issues reserved for the Commissioner).  Moreover, the ALJ is not required to give any special significance to the opinion of medical sources on these issues.  20 C.F.R. § 404.1527(d)(3).

Plaintiff argues that the ALJ's RFC determination is flawed in two respects.  First, Plaintiff claims that the ALJ erred by not placing additional limitations on Plaintiff's ability to finger, handle, and feel.  (ECF No. 15 at 28).  Next, Plaintiff argues that the ALJ erred in not including "a sit/stand option with breaks in sitting 6 hours during an 8-hour day."  *Id.*

*1.   The Record Supports the RFC's Manipulative Limitations*

Plaintiff argues that the ALJ erroneously based her "entire analysis regarding [Plaintiff's] hands . . . upon the Commissioner's belief that [Plaintiff's] debilitating bilateral [CTS] resolved after surgery in September 2015." (ECF No. 15 at 26). To support her argument that further manipulative restrictions are warranted, Plaintiff cites to: (i) Dr. Teman's June 2017 EMG/NCV study showing that Plaintiff's CTS either recurred or never resolved; and (ii) Plaintiff's continued post-surgery complaints of numbness and tingling in her palms, emergence of mild trigger fingers, and mild arthritic pain in her thumb. (ECF No. 15 at 26-27).

Upon review, however, the medical evidence does not support Plaintiff's arguments. First, while Dr. Teman's June 2017 EMG/NCV showed that Plaintiff had "bilateral CTS symptoms," this diagnosis alone is insufficient to establish that Plaintiff is disabled. *See* (R. 366). Rather, "[d]isability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005). Although Dr. Teman found that Plaintiff's test results were consistent with CTS, the doctor did not identify any resulting limitations on Plaintiff's ability to work. To the contrary, Dr. Teman noted that Plaintiff was "otherwise intact to pinprick, light touch, vibration and proprioception." (R. 365). Dr. Teman also noted Plaintiff had "[n]o neglect to double simultaneous tactile stimulation" and had "[n]egative tinels over the median nerves at both wrists." *Id.* In addition, Plaintiff reported to Dr. Teman that her pain had "been resolved since the 2015 surgeries," although she had begun to feel non-painful numbness in her hands. (R. 366).

Similarly, Plaintiff's post-surgery complaints of numbness and tingling in her palms, emergence of mild trigger fingers, and mild arthritic pain in her thumb do not support additional manipulative restrictions. *See* (ECF No. 15 at 26-27). As noted previously, Plaintiff has been pain-free since the September 2015 CTS-release surgeries. *See, e.g.,* (R. 366) (Dr. Teman's June 2017

report that Plaintiff's "painful paresthesias/dysesthesias have been resolved since the 2015 surgeries"); *see also* (R. 51) (Plaintiff's September 2017 testimony that surgery resolved her hand pain); (R. 344, 373, 375, 377, 379, 381, 383, 385) (treatment notes, dated between February 2016 and July 2017, reflecting that Plaintiff's hand pain had either resolved or improved after CTS surgery); (R. 347) (Dr. Traverso's November 2015 treatment notes reflecting normal sensation to light touch in all digits with no active triggering, and recommending splinting and Ibuprofen for Plaintiff's thumb pain); (R. 341) (Dr. Traverso's October 2015 treatment notes reflecting Plaintiff had no complaints and was "using her hands for everything she can"). Moreover, despite Plaintiff's complaints of non-painful tingling and numbness in her hands, treatment notes reflect only mild functional limitations. For example, in June 2015, Plaintiff's overall grip strength was only mildly reduced from 5/5 to 4/5. (R. 287, 294). Although Plaintiff complained of pain at the base of her right thumb in November 2015, she described the pain as "not very severe," and Dr. Traverso found this pain was likely caused by arthritis, not CTS. (R. 347). Upon examination in June 2017, Dr. Teman found "all muscles are 5/5 strength to manual muscle testing." (R. 365). Lastly, steroid injections in July and August 2017 relieved Plaintiff's CTS symptoms. (R. 387).

Plaintiff's activities of daily living are also inconsistent with Plaintiff's allegations of disabling symptoms. (R. 17); *see Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (considering claimant's activities of daily living as a factor in evaluating intensity of claimant's subjective symptoms); *see also* SSR 16-3p, 2016 WL 1119029 at *7 (Mar. 16, 2016) (claimant's daily activities as a factor in evaluating intensity, persistence, and limiting effects of claimant's symptoms); 20 C.F.R. § 404.1529(c)(3)(i) (same). Here, Plaintiff testified that her daily activities included reading newspapers, books, magazines, using a computer or tablet, watching television, doing yoga, going out to eat and to the movies, and that she was able to write checks. (R. 51-52). In a June 2015 Adult Function Report, however, Plaintiff reported a broader range of daily activities, such as walking

on the track, playing with her dogs, swimming and stretching in the pool, and cooking dinner. (R. 189).  Plaintiff also reported that she took care of her husband and elderly mother by preparing three meals a day, doing laundry, ironing, and cleaning.  (R. 189, 190).

Ultimately, the responsibility for determining a claimant's RFC rests with the ALJ.  20 C.F.R. §§ 404.1546(c), 404.1527(d)(2) (RFC determination reserved for the Commissioner); *Moore,* 649 F. App'x at 945 ("[T]ask of determining a claimant's residual functional capacity and ability to work rests with the administrative law judge, not a doctor."); *Robinson,* 365 F. App'x at 999 (same). Moreover, the ALJ is not required to give any special significance to the opinion of medical sources on this issue.  20 C.F.R. § 404.1527(d)(3).  Against this backdrop, substantial evidence supports the ALJ's RFC determination.

> 2.   *The Record Supports the RFC's Sit/Stand Limitations*

Plaintiff next argues that the ALJ erred in finding that Plaintiff could sit for 6 hours and stand/walk for 2 hours in an 8-hour workday.  (ECF No. 15 at 25, 28-29).  More specifically, Plaintiff argues that "[t]he medical evidence of record, taken as a whole, supports limitations to a sit/stand option with breaks in sitting 6 hours during an 8 hour day." *Id.* at 28.

Plaintiff's argument for additional postural limitations is conclusory and cursory—consisting of only three sentences in her brief.  *Id.* at 28-29.  Arguments raised "in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."  *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) (citation omitted).  But Plaintiff's argument also fails on the merits.

Plaintiff saw Dr. Troiano regularly between January 2015 and July 2017 for hand and back pain.  (R. 282-85, 293-94, 303-04, 310-15, 317-19, 359-63, 371-86).  Dr. Troiano's treatment notes, however, do not reflect debilitating back problems warranting the restrictions requested by Plaintiff. For instance, at Plaintiff's first visit in January 2015, Plaintiff reported localized lower back pain.

(R. 282).  Plaintiff also reported that she had been diagnosed with three herniated disks in 2007, but that her back pain had improved since then and "she returned to the gym and continues to work out doing light exercise."  *Id*.  A January 2015 MRI of Plaintiff's lumbar spine showed "mild to moderate central stenosis at L3-L4, neural foraminal stenosis at multiple levels and degenerative changes in the lumbar spine, with disc bulging at all levels and a grade 1 spondylolisthesis at L4-L5."  (R. 284).  On examination, Plaintiff had minimal tenderness along the joints, straight leg raise testing was negative, her gait was normal, and she had no gross neurological deficits.  (R. 279, 282-83).  In February 2015, Dr. Troiano recommended that Plaintiff continue her exercise program, suggesting she consider possible therapy or epidurals if needed.  (R. 284).  But Plaintiff did not request therapy or epidurals.  Instead, between February 2015 and July 2017, Plaintiff's only treatment for back pain was exercise and pain medications.  *See*  (R. 285, 303, 371, 372, 373, 375, 377, 379, 381, 383).  Moreover, in June 2015, Dr. Troiano indicated Plaintiff had 5/5 muscle strength in her lower extremities and no symptoms of gait disturbance, radiculopathy, or limited range of motion.  (R. 294).

Similarly, Dr. Alexander's treatment records also do not support Plaintiff's arguments for sitting limitations with a stand/walk option.  For example, upon examination in August and September 2015, Dr. Alexander found Plaintiff's back was "normal."  (R. 328, 330).  Upon examination in December 2015 and June 2016, Plaintiff's back was also normal, with full range of motion, no costovertebral tenderness, and her spine was normal and nontender to palpation. (R. 351, 355).  Like Dr. Troiano, Dr. Alexander continued conservative treatment with Ibuprofen and Vicodin.[6]  (R. 332-33, 355-56).

---

[6] Relatedly, Plaintiff's allegation of disabling back pain is inconsistent with her prior statements to the SSA regarding her activities of daily living.  For example, in an Adult Function Report and a Supplemental Pain Questionnaire, Plaintiff complained only of discomfort from prolonged standing, not from sitting.  (R. 188, 196).

As noted above, it is not for this court to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel,* 631 F.3d at 1178 (quoting *Phillips,* 357 F.3d at 1240 n.8). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth,* 703 F.2d at 1239 (citing 42 U.S.C. § 405(g)). Moreover, the responsibility for determining a claimant's RFC rests with the ALJ. *See* 20 C.F.R. §§ 404.1546(c), 404.1527(d)(2); *Moore,* 649 F. App'x at 945; *Robinson,* 365 F. App'x at 999. Accordingly, substantial evidence supports the ALJ's RFC determination regarding Plaintiff's postural limitations.

**B. The ALJ Properly Considered the Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in evaluating the medical opinions. First, Plaintiff argues that the ALJ failed to consider and assign weight to several medical opinions: (i) Dr. Troiano's June 2015 Treating Source Orthopedic Questionnaire (R. 293-94); (ii) Dr. Chamely's June 2015 Neurological Questionnaire (R. 286-87); and (iii) Dr. John Harper's (State Agency consultative examiner) November 2015 Review of Physical RFC Assessment. (R. 342-43). *See* (ECF No. 15 at 29-30). Second, Plaintiff argues that the ALJ erred in assigning "little weight" to the opinions of her treating sources, Drs. Troiano and Alexander. (ECF No. 15 at 30-32). As discussed below, the undersigned finds that the ALJ applied the proper legal standards in evaluating the medical opinion evidence and that substantial evidence supports the ALJ's Decision.

*1. Legal Standards Regarding Medical Opinion Evidence*

Under the applicable Social Security regulations, an ALJ must consider and evaluate every medical opinion received in determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis

and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).  Treatment notes may be considered medical opinions when they reflect judgments about the "nature and severity" of a claimant's impairments and resulting limitations.  *See Lara v. Comm'r of Soc. Sec.,* 705 F. App'x 804, 812 (11th Cir. 2017) (records that do not contain judgments about the "nature and severity" of claimant's impairments are not medical opinions that ALJ was required to weigh); *Martinez v. Acting Comm'r of Soc. Sec.,* 660 F. App'x 787, 793 (11th Cir. 2016) (medical records that "contained only general physical information and a referral" were not a medical opinion that ALJ was required to weigh).

In weighing medical opinions, an ALJ is required to consider certain factors, including: (i) whether the claimant has an examining or treating relationship with the medical source; (ii) the medical source's area of specialization; (iii) whether the medical source's opinion is well-supported; and (iv) whether the opinion is consistent with the record.  *See* 20 C.F.R. § 404.1527(c).  Moreover, an ALJ must generally give controlling weight to the opinion of a treating source[7] about the nature and severity of a claimant's impairments if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  When an ALJ does not give controlling weight to a treating source's opinion, the ALJ must clearly articulate "good cause" for discounting it.  *Winschel*, 631 F.3d at 1179 (citing *Phillips*, 357 F.3d at 1240-41).  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"

---

[7] A "treating source" is the claimant's own physician or psychologist who has provided the claimant with medical treatment or evaluation, and who has had "an ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1527(a)(2).  An "ongoing treatment relationship" generally means the claimant sees, or has seen, the physician or psychologist "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)."  *Id.*

*Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).  Ultimately, the ALJ can discount even the opinion of a treating physician, as long as the ALJ articulates her reasons, and failure to do so is reversible error.  *Lewis,* 125 F.3d at 1440 (citation omitted); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) ("The law is clear that . . . the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.") (quoting *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981)).  Regardless of what weight is ultimately given, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor" so that a reviewing court may "determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel,* 631 F.3d at 1179 (citation omitted).

 2. *The ALJ Need Not Mention Every Medical Opinion or Source*

Plaintiff argues that the ALJ failed to specifically consider and weigh three medical opinions: (i) Dr. Troiano's June 2015 Treating Source Orthopedic Questionnaire (R. 293-94); (ii) Dr. Chamely's June 2015 Neurological Questionnaire (R. 286-87); and (iii) Dr. Harper's November 2015 Review of Physical RFC Assessment (R. 342-43).  *See* (ECF No. 15 at 29-30).  As discussed more fully below, the ALJ's Decision confirms that the ALJ considered the medical record evidence. *See* (R. 15-18).  Furthermore, the ALJ is not required to discuss every piece of evidence.  *See, e.g., Lewen v. Comm'r of Soc. Sec.,* 605 F. App'x 967, 969 (11th Cir. 2015) ("[W]hile the ALJ is required to state the weight afforded to each medical opinion . . . the ALJ is not required to discuss every piece of evidence") (citing *Dyer,* 395 F.3d at 1211 (ALJ's decision need not discuss every piece of evidence).  The ALJ is not required to specifically refer to every piece of evidence in the record, as long as the ALJ's decision is not a broad rejection of the claimant's condition as a whole.  *Packer v. Comm'r, Soc. Sec. Admin.,* 542 F. App'x 890, 891-92 (11th Cir. 2013) (citation omitted).  Rather, the ALJ must provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.  *Id.*  Here, the ALJ provided enough reasoning for the

undersigned to conclude that the ALJ properly considered Plaintiff's medical condition in assessing her RFC.

       a.   Dr. Troiano's Orthopedic Questionnaire

In June 2015, Dr. Troiano completed an Orthopedic Questionnaire, found at Exhibit 7F in the administrative record. (R. 293-94). In the Orthopedic Questionnaire, Dr. Troiano diagnosed Plaintiff with lumbar disc herniation and bilateral carpal tunnel syndrome. (R. 293). Dr. Troiano noted that Plaintiff's "paresthesias median nerve, right and left hands" caused Plaintiff to have decreased grip strength, decreased ability to perform fine manipulation, and chronic pain. (R. 294). Dr. Troiano noted that Plaintiff's grip strength was 4/5 and her lower extremity strength was 5/5. *Id.* Lastly, Dr. Troiano opined that Plaintiff was unable to perform fine/gross manipulation on a sustained basis due to bilateral CTS. *Id.*

Plaintiff argues that "[n]owhere in the hearing decision is [Dr. Troiano's] opinion at [Exhibit] 7F . . . mentioned or evaluated . . . ." (ECF No. 15 at 29). This one line is Plaintiff's entire argument on this point. Arguments made in such a perfunctory manner are generally deemed waived. *McClain of Georgia, Inc.*, 138 F.3d at 1422 (citation omitted). Plaintiff's argument, however, also fails on the merits.

First, the ALJ is not required to discuss every piece of evidence or mention every medical source in the record. *See, e.g., Lewen,* 605 F. App'x at 969; *Dyer,* 395 F.3d at 1211. Rather, the ALJ must provide enough reasoning for a reviewing court to conclude that the ALJ's decision is not a broad rejection of the claimant's condition and that the ALJ considered the claimant's medical condition as a whole. *Packer,* 542. F. App'x at 891-92 (citing *Dyer,* 395 F.3d at 1211).

 Second, the information in the Orthopedic Questionnaire is cumulative of Dr. Troiano's other opinions, which the ALJ fully considered and weighed. Specifically, the ALJ considered the following opinions from Dr. Troiano:

Exhibit 9F: August 2015 treatment note, in which Dr. Troiano opined that Plaintiff "should apply for long-term disability . . . as it does not appear she will improve and at this time cannot engage in gainful employment." (R. 304).

Exhibit 10F: August 2015 Spinal Impairment Questionnaire, in which Dr. Troiano opined that Plaintiff did not have significant limitations in reaching, handling and fingering, but could never/rarely grasp, twist objects and use her hands/fingers for fine manipulation, and whose symptoms would worsen in a competitive work setting. (R. 314).

Exhibit 11F: September 2015 letter stating that Plaintiff was "totally disabled" "from a musculoskeletal standpoint" due to her lumbar spine and carpal tunnel, and ultimately concluding that Plaintiff "is completely and totally disabled with no expectation of improvement in the future." (R. 318-19).

Exhibit 20F: May 2017 Disability Impairment Questionnaire, in which Dr. Troiano opined that Plaintiff had significant limitations in reaching, handling and fingering, and could only occasionally grasp, twist objects, and do fine manipulation, and whose symptoms would worsen in a competitive work setting. (R. 362).

*See* (R. 17).

The ALJ gave these opinions "little weight." (R. 17). Although the ALJ did not refer to Dr. Troiano's June 2015 opinion in her Decision, this omission is harmless because the June 2015 opinion simply repeats the conclusions contained in Exhibits 9F, 10F, 11F and 20F, which the ALJ addressed in the Decision. Nothing in Exhibit 7F would have affected the ALJ's ultimate determination. *See Hunter v. Comm'r of Soc. Sec.,* 609 F. App'x 555, 558 (11th Cir. 2015) (noting that ALJ's error is harmless "if it did not affect the ALJ's ultimate determination"); *Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error doctrine in Social Security appeal after finding that administrative law judge made "erroneous statements of fact"). Thus, the undersigned finds no error.

### b. Dr. Chamely's Neurological Questionnaire

In June 2015, Dr. Chamely completed a Neurological Questionnaire, found at Exhibit 5F of the administrative record. (R. 286-87). In the Questionnaire, Dr. Chamely diagnosed Plaintiff with CTS, and noted Plaintiff's decreased grip strength (4 out of 5) and sensory loss. *Id.* Plaintiff argues

that the ALJ erred in not specifically considering and weighing Dr. Chamely's Neurological Questionnaire.  (ECF No. 15 at 30).

Contrary to Plaintiff's assertion, the ALJ did, in fact, consider Dr. Chamely's Neurological Questionnaire in formulating Plaintiff's RFC.  Specifically, the ALJ wrote, "[Plaintiff's] neurologist noted decreased grip strength (4/5) and sensory loss (Exhibit 5F)."  (R. 16).  Moreover, this opinion (like Dr. Troiano's opinion at Exhibit 7F) is cumulative of other evidence in the record. Consequently, nothing in Exhibit 5F would have affected the ALJ's ultimate determination.  *See Hunter,* 609 F. App'x at 558; *Diorio,* 721 F.2d at 728.  Accordingly, Plaintiff's arguments regarding Dr. Chamely are unpersuasive.

### c.   Dr. Harper's Consultative Review

Dr. Harper was a consultative examiner who reviewed the State Agency Examiner's (Dr. Larry Meade's) assessment of Plaintiff's RFC.  (R. 342-43).  Dr. Harper concurred with Dr. Meade's RFC, except Dr. Harper stated that Plaintiff could frequently lift/carry 8 pounds, instead of 10 pounds as Dr. Meade found.  *Compare* (R. 87-91) *with* (R. 342-43).  Plaintiff argues that the ALJ erred in failing to consider Dr. Harper's opinion that Plaintiff could only frequently lift/carry 8 pounds, found in Exhibit 17F of the administrative record.  (ECF No. 15 at 30).

Plaintiff's one-line argument is cursory and unpersuasive.  Contrary to Plaintiff's argument, the ALJ specifically referred to Exhibit 17F (Dr. Harper's concurring opinion) in evaluating Dr. Meade's opinion.[8]  (R. 18, 342-43).  In addition, Plaintiff's conclusory argument fails to explain the significance of the two-pound difference in the lifting/carrying limitation or its effect on Plaintiff's RFC or her ability to perform past relevant work.  *See* (ECF No. 15 at 30).  Moreover, Dr. Harper

---

[8] The ALJ afforded "some weight" to Dr. Meade's opinion and imposed more severe limitations than Dr. Meade had recommended.  The ALJ limited Plaintiff's ability to stand/walk to two hours (instead of six) and limited Plaintiff to only "frequently" feeling with both upper extremities (instead of unlimited feeling).  *Compare* (R. 18) *with* (R. 87, 88).  These additional limitations were designed to account for Plaintiff's subjective complaints of low back pain and carpal tunnel syndrome.  (R. 18).

*concurred* with Dr. Meade, so Dr. Harper's opinion would not have affected the ALJ's determination. Accordingly, Plaintiff's argument that the ALJ erred in not considering Dr. Harper's opinion is without merit.

### 3.   *The ALJ Did Not Err in Weighing Plaintiff's Treating Source Opinions*

Next, Plaintiff argues that the ALJ erred in failing to articulate "good cause" to discount the opinions of Drs. Troiano and Alexander, Plaintiff's treating sources.  (ECF No. 15 at 30-32).  After a review of the record, the undersigned finds that substantial evidence supports the ALJ's decision to discount these treating source opinions.

### a.   Dr. Troiano's Opinion

Dr. Troiano was Plaintiff's treating orthopedist from January 2015 through July 2017. (R. 282-85, 293-94, 303-04, 310-19, 359-63, 371-86).  The record contains several medical opinions from Dr. Troiano: (i) June 2015 Treating Source Orthopedic Questionnaire (R. 293-94) (Exhibit 7F), previously discussed in Section V-B-2-a, above; (ii) August 2015 treatment note (R. 304) (Exhibit 9F); (iii) August 2015 Spinal Impairment Questionnaire (R. 310-15) (Exhibit 10F); (iv) September 2015 Narrative Report (R. 317-19) (Exhibit 11F); and (v) May 2017 Disability Impairment Questionnaire (R. 359-63) (Exhibit 20F).   As to these opinions, the ALJ stated:

> As for the opinion evidence, [Dr. Troiano] opined the claimant could not engage in gainful employment due to her musculoskeletal complaints and findings (Exhibits 9F & 11F).  The claimant has sharp stabbing pain in her lumbar spine aggravated by lifting, walking, bending and squatting.  Dr. Troiano noted the claimant has limited range of motion, tenderness and muscle weakness.  He estimated she can perform a job sitting for one hour and standing and/or walking for less than one hour.  It is medically necessary for the claimant to avoid continuous sitting in an eight-hour workday.  She must stand every hour for fifteen minutes.  The claimant can occasionally lift and/or carry up to ten pounds occasionally.  She is not able to walk a block at a reasonable pace on rough or uneven surfaces.  However, she is able to use public transportation, carry out routine ambulatory activities, and climb a few stairs at a reasonable pace.  The claimant does not have significant limitations in reaching, handling or fingering.  However, she can never grasp, turn, and twist objects; or use hands/fingers for fine manipulations.  She could occasionally use both arms for reaching in all directions.  The claimant's symptoms would likely

increase if she were placed in a competitive work environment (Exhibit 10F).  In a follow-up questionnaire in May 2017, Dr. Troiano opined the claimant's limitations continued (Exhibit 20F).

(R 17).

In assigning "little weight" to these opinions, the ALJ explained:

The undersigned accords little weight to this opinion as it is an overstatement of the claimant's limitations.  [Plaintiff] underwent carpal tunnel release surgery and her debilitating symptoms were resolved.  The claimant reported her only remaining symptoms was [sic] painless numbness in the palm of her hands.

*Id.*

Plaintiff argues that the ALJ's rationale for assigning "little weight" to Dr. Troiano's opinion is "factually incorrect and not supported by substantial evidence."  (ECF No. 15 at 31).  Plaintiff also argues that the ALJ "did not articulate precisely how this opinion is an overstatement" and failed to address Plaintiff's back limitations and need for a sit/stand option.  *Id*.  Plaintiff's arguments, however, are not supported by the record.

As to Plaintiff's hands, Dr. Troiano's opinions of June, August, and September 2015 predate Plaintiff's CTS-release surgery, and are therefore based on symptoms that had been resolved or had improved by the time of the hearing and the ALJ's Decision.  Indeed, during medical visits and at the hearing, Plaintiff reported that the CTS-release surgeries permanently resolved the pain in her hands. *See, e.g.,* (R. 51, 366).  Plaintiff also reported that from October 2015 to January 2016, she did not suffer from numbness and tingling in her hands and she was able to use her hands for everything. (R. 50, 344, 366).  Plaintiff's improvement after CTS-release surgery provides substantial evidence for the ALJ's decision to discount Dr. Troiano's incapacitating opinions.  *See Gober v. Astrue*, No. 1:09-CV-00123-MP-WCS, 2010 WL 750288, at *7 (N.D. Fla. Feb. 26, 2010) (noting that claimant's improvement after treatment may provide substantial evidence to discount a treating physician's opinion).

Moreover, Dr. Troiano's opinion regarding Plaintiff's manipulative limitations is inconsistent with other evidence in the record.  For example, upon examination in November 2015, Plaintiff had full range of motion and normal sensation to light touch in all digits, with no active triggering. (R. 347).  At a January 2016 visit, Plaintiff reported only "some weakness on grasp such as opening a jar."  (R. 372).   Moreover, a June 2017 neurological examination revealed that Plaintiff had "[d]ecreased median nerve distributions bilaterally [but] was otherwise intact to pinpricks, light touch, vibration and proprioception" and had "[n]o neglect to double simultaneous tactile stimulation," with negative Tinel's over the median wrists.  (R. 365).

As to Plaintiff's back pain, Dr. Troiano's opinion is inconsistent with his own treatment notes.[9]  Plaintiff first visited Dr. Troiano in January 2015, complaining of low back pain and paresthesias of both hands.  (R. 282).   In February, Dr. Troiano diagnosed Plaintiff's chronic low back pain as secondary to "mild to moderate" central stenosis L3-L4, multilevel neural foraminal stenosis, and degenerative changes in the lumbar spine. (R. 284).  Dr. Troiano recommended that Plaintiff continue her exercise program.  *Id.*  The sole focus of Plaintiff's next visit in April 2015 was her bilateral CTS.  (R. 285).  Although Dr. Troiano at times noted tenderness in Plaintiff's lower back and reduced motor strength in the right L3 musculature, Dr. Troiano only recommended conservative treatment, such as pain medication (Ibuprofen and Vicodin) and exercise.  *See, e.g.,* (R. 45-46, 333, 352, 371-76).   Nor did any other doctor recommend back surgery.  (R. 48).   Such conservative treatment supports the ALJ's conclusion that Dr. Troiano overstated Plaintiff's limitations.  *See Davis v. Astrue*, No. 09-80748-CIV, 2010 WL 4683910, at *15 (S.D. Fla. Nov. 10, 2010) (concluding that ALJ did not err in finding claimant's back pain to be non-disabling where pain was reasonably

---

[9] In addition, Dr. Troiano's opinion regarding the severity of Plaintiff's back limitation is likewise inconsistent with other record evidence.  For example, examinations by Dr. Alexander in December 2015 and June 2016 showed that Plaintiff's back was normal with full range of motion, no costovertebral tenderness, and spine was normal and nontender to palpation.  (R. 351, 355).

managed with medication).   In fact, it was not until Plaintiff submitted disability forms that Dr. Troiano began to incorporate increasingly severe limitations.   *See, e.g.,* (R. 294) (June 2015 Orthopedic Questionnaire, noting that Plaintiff's grip is 4/5); (R. 304) (August 2015 treatment notes, referencing disability forms and stating that "Plaintiff should apply for long-term disability . . . as it does not appear she will improve and . . . cannot engage in gainful employment").   In an August 2015 Spinal Impairment Questionnaire, despite the absence of treatment notes to support these severe restrictions, Dr. Troiano opined that Plaintiff could not stand/walk/or sit for more than one hour in an 8-hour day and could never or rarely grasp, turn or twist objects or perform fine manipulation. (R. 312, 314).

An ALJ can discount a treating source's opinion when "good cause" exists, such as when the: (i) treating physician's opinion is not bolstered by the evidence; (ii) evidence supports a contrary finding; or (iii) treating physician's opinion was inconsistent with the doctor's own medical records. *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).   As well, whether a person is disabled and cannot work is a determination reserved for the Commissioner.   20 C.F.R. § 404.1527(d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . ."); *see also Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 919 (11th Cir. 2019) (ALJ did not err in discounting treating source opinion that claimant was disabled and unable to work, which is an issue reserved for the Commissioner).

Against this factual and legal backdrop, the ALJ had good cause to discount Dr. Troiano's opinion as unsupported by the record.   Accordingly, substantial evidence supports the ALJ's reasoning that Dr. Troiano overstated Plaintiff's limitations.   *See Martinez,* 660 F. App'x at 794 (ALJ did not err in discounting treating physician's opinion that was "inconsistent with overall record").

b.   Dr. Alexander's Opinion

Dr. Alexander was Plaintiff's primary care physician from December 2014 through August 2017.  (R. 254-55, 322-27, 329-35, 348-56, 389-95).  The record contains two medical opinions from Dr. Alexander: (i) September 2015 Disability Impairment Questionnaire (R. 322-26) (Exhibit 12F); and (ii) September 23, 2015 letter (R. 335) (Exhibit 14F).  As to these opinions, the ALJ stated:

> [Dr. Alexander] completed a disability impairment questionnaire on September 16, 2015.  The claimant's primary symptoms are severe low back pain, and weakness and numbness in hands and fingers.  These are aggravated with standing, walking, and sitting for too long, and continuous use of the hands.  He opined the claimant cannot perform a job, either sitting or standing for more than an hour.  The claimant should avoid continuous sitting in an eight-hour day and should change positions every half an hour.  She could occasionally lift up to five pounds but never more. The claimant could never/rarely use her hands for grasping, turning, and twist[ing] objects . . . [or] use hands/fingers for fine manipulations (Exhibits 12F & 14F). *The undersigned accords little weight to this opinion as it relates to the adjudication period in question.  This opinion was prior to claimant's hand surgery and she has recovered use of her hands.*

(R. 17) (emphasis added).

The undersigned finds that the ALJ did not err in assigning "little weight" to Dr. Alexander's opinions.   First, both opinions predate Plaintiff's CTS-release surgery and resulting medical improvement.   The CTS-release surgeries permanently resolved Plaintiff's preoperative pain and eliminated the numbness and tingling in her hands for approximately four months, during which Plaintiff was able to use her hands for "everything."  (R. 50, 344).  Moreover, Plaintiff's CTS pain never returned.  (R. 366).   Evidence of medical improvement undermines Plaintiff's allegation of a disabling condition.  *See Gober,* 2010 WL 750288, at *7.

Accordingly, the undersigned finds that the ALJ articulated "good cause" to discount Dr. Alexander's opinions.

### C.  Plaintiff Failed to Establish a Closed Period of Disability

Plaintiff argues that the ALJ should have found Plaintiff disabled for a "closed period," from May 29, 2014 to September 30, 2015.  (ECF No. 15 at 32-33).  In a nutshell, Plaintiff argues that the ALJ should have formulated a separate RFC to account for her pre-surgery CTS limitations.

In a "closed period" case, the ALJ decides whether a claimant was disabled for a finite period that "started and stopped prior to the date of [the] decision."  *Mitchell v. Comm'r of Soc. Sec.*, 393 F. App'x 651, 652 (11th Cir. 2010) (citing *Pickett v. Bowen,* 833 F.2d 288, 289 n. 1 (11th Cir.1987)). Here, however, Plaintiff did not file a claim for a "closed period" of disability.  *See generally* (R. 73-74, 95-96, 101-02).  Nor did she request the ALJ to consider a closed period of disability.  *See* (R. 41-60).  Plaintiff's failure to request consideration of a closed period of disability either during her application process or in her administrative hearing precludes her from arguing on appeal that the ALJ erred by failing to consider such a closed period.  *Martin v. Astrue*, No. 09-81136-CIV, 2010 WL 1286520, at *11 (S.D. Fla. Feb. 24, 2010) (claimant's failure to request consideration of a closed period of disability precludes claimant from arguing on appeal that the ALJ erred by failing to consider the same), *report and recommendation adopted,* No. 09-81136-CIV, 2010 WL 1257902 (S.D. Fla. Mar. 30, 2010); *see also Hein v. Saul*, No. 8:18-CV-1459-T-AAS, 2019 WL 4509381, at *6 (M.D. Fla. Sept. 19, 2019); *Torres v. Comm'r of Soc. Sec.*, No. 6:13-CV-1687-ORL-GJK, 2015 WL 898576, at *5-6 (M.D. Fla. Mar. 3, 2015).  Accordingly, Plaintiff's argument fails.

## VI.   RECOMMENDATION

For the reasons discussed above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 15) be **DENIED**, Defendant's Motion for Summary Judgment (ECF No. 16) be **GRANTED**, and the ALJ's Decision be **AFFIRMED**.

Within **fourteen (14)** days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as

provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. J. R. 4(b).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3–1 (2019); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida on February 27, 2020.


ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE


cc: U.S. District Judge Beth Bloom
    All Counsel of Record